UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN W. HAWTHORNE,      ) | |
|        ) | |
|     Plaintiff,      ) | |
|        ) | |
|     v.        ) | Civil Action No. 11-1406 (RCL) |
|        ) | |
| MAYOR VINCENT C. GRAY, *et al.*,      ) | |
|        ) | |
|     Defendants.      ) | |

**FILED**

SEP 2 6 2012

Clerk, U.S. District and
Bankruptcy Courts

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended

Complaint [Dkt. #26] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Because defendants have presented matters outside of the pleadings which the Court has

considered, the motion is treated as one for summary judgment under Rule 56 of the Federal

Rules of Civil Procedure.  For the reasons discussed below, defendants' motion will be granted.

### I. BACKGROUND

On May 25, 2011, plaintiff began to serve a 90-day sentence at the District of Columbia

Central Detention Facility ("D.C. Jail").  Compl. ¶¶ 2-3.[1]  According to plaintiff, the poor living

conditions at the D.C. Jail – overcrowding, poor sanitation, inadequate ventilation, and extreme

heat – contributed to the growth and spread of dangerous bacteria throughout the facility.  *See*

Compl. ¶¶ 25-26.  The plaintiff contracted a staph infection so severe as to require excision of

damaged tissue.  *See id.*  ¶¶ 15-18.  On June 25, 2011, "less than a week after surgery, Pl.'s Aff.

---

[1]    Although plaintiff has amended his complaint [Dkt. #24], it does not appear that he has
abandoned claims set forth in the original pleading [Dkt. #1].  For purposes of this discussion,
the Court relies on factual allegations set forth in both documents.

in Opp'n to Defs.' Mot. for Summ. J. [Dkt. #31] ("Pl.'s Opp'n") at 4, plaintiff was transferred

from the D.C. Jail to the Correctional Treatment Facility ("CTF") for care of the resulting

wound, Compl. ¶ 21.

Plaintiff alleges that defendants "failed [to ensure his] safety and security [by] exposing

[him] to deadly bacteria, unhealthy conditions, overcrowding, and poor sanitation," and have

caused him to "suffer[] severe pain and anguish." Compl. ¶ 28. Additionally, he alleges that

defendants "showed deliberate indifference to [his] medical needs." Am. Compl. ¶ 23B. He

brings this civil rights action under 42 U.S.C. § 1983 for alleged violations of his Eighth

Amendment right to be free from cruel and unusual punishment. *See* Compl. ¶¶ 1, 3, 23-24.

Plaintiff demands compensatory and punitive damages totaling $3,000,000, Compl. ¶ 29; Am.

Compl. ¶ 30, for the "pain and suffering, emotional duress, anguish, [and] physical scares [sic]

plaintiff will bare [sic] for the rest of his life." Am. Compl. ¶ 29.

## II. DISCUSSION

### A. Summary Judgment Standard

The Court grants summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43

F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are material, the Court looks to the

substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). The mere existence of a factual dispute does not bar summary judgment. *See id.* A

genuine dispute is one whose resolution could establish an element of a claim or defense and,

therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* The Court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of his position. *Id.* at 252. He must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he cannot rely on conclusory assertions without any factual basis in the record to create a genuine dispute. *See Ass'n of Flight Attendants–CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).

### B. *Mayor Gray and Warden Wainwright*

Plaintiff has named the Mayor of the District of Columbia and the Warden of the D.C. Jail as defendants to this action. *See* Compl. at 1 (caption); *see id.* at 4. In later submissions, he clarified that he "makes no claim of wrongdoing against Mayor Vincent Gray and Warden Simon Wainwright," and certainly makes no attempt at "suing a building D.C. Jail." Mem. of P. & A. in Supp. of Dismissing Defs.' Mot. Requesting the Dismissal of Pl.'s Compl. [Dkt. #18] at 2; *see* Pl.'s Mot. to Deny Defs.' Mot. to Dismiss [Dkt. #17] at 2. The Court will dismiss Mayor Gray and Warden Wainwright as parties to this action, and will construe the complaint as if all claims were brought against the District of Columbia alone.

### C.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") in relevant part provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This exhaustion requirement is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *see Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").  Exhaustion under the PLRA requires "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), meaning that a prisoner must comply with procedural rules, including filing deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Thus, a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted the prison's administrative remedies. *Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001).   A prisoner is subject to the exhaustion requirement even after his release from custody.  *See, e.g., Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002) (finding that plaintiff was bound by PLRA's exhaustion requirement notwithstanding his release from prison after filing lawsuit concerning prison conditions); *Hunter v. Corr. Corp. of Am.*, 441 F. Supp. 2d 78, 82 (D.D.C. 2006) (applying exhaustion requirement to a former inmate).

The Inmate Grievance Procedures in effect at the D.C. Jail set forth a four-step process "through which inmates of the District of Columbia Department of Corrections (DOC) may seek resolution of complaints." Defs.' Mem., Ex. A (Program Statement 4020.1G, <u>Inmate Grievance</u>

Procedures (IGP), dated March 9, 2010) at 1; *see id.*, Ex. A at 8-14.  Generally, an inmate begins

with an informal complaint submitted on a request slip to a staff member.  *See id.*, Ex. A at 8-9.

If he is not satisfied with the resolution of his informal complaint, the inmate may file a formal

grievance with the Warden of the D.C. Jail, *see id.*, Ex. A at 9-11, an appeal to the Deputy

Director of the DOC, *see id.*, Ex. A at 12, and a final appeal to the Director of the DOC, *see id.*,

Ex. A at 12-14.  "[I]ncoming prisoner grievances are scanned and entered into a computer

database which can be searched by the name of the sender."  *Id.*, Ex. C (Lee Aff.) ¶ 4.

    Defendant shows that the DOC's Grievance Coordinator reviewed the relevant database

and found that plaintiff "did not submit a grievance during [calendar year] 2011."  *Id.*, Lee Aff. ¶

6.  However, plaintiff did submit an informal grievance on or about June 16, 2011, which in

relevant part stated:

> I arrived at this facility 5-25-11 and went through the intake
> procedure.  Since that time I submitted numerous request [sic] to
> the medical staff regarding me not being able to breathe because of
> the extreme heat, sore and scratchy throat, watery eyes, and
> coughing up mucus[,] inflammation, and runny nose.  I submitted
> another sick call after being prescribed [medication] by Dr.
> Wilkins and was told at the nurses [sic] clinic that I will feel better
> after receiving my refill . . . .  I need to see the physician again
> because the medicine is not working.  I am seeking to get the
> correct medical treatment.  I haven't gotten any better spitting up
> this mucus and nose and eyes still running and having difficulty
> breathing.

*Id.*, Ex. B (Informal Grievance Form dated June 16, 2011).  The Grievance Coordinator received

the informal grievance on July 7, 2011, and Warden Wainwright responded on July 20, 2011.

*See id.*, Ex. D (Memorandum to plaintiff from Simon T. Wainwright dated July 20, 2011).

    Plaintiff attached two exhibits to his complaint which purport to be "written duplicates"

of an informal grievance dated July 1, 2011, and a final appeal dated July 26, 2011.  *See* Compl.,

Ex. A.  These exhibits are of no use to plaintiff, however.   Even if the "final appeal" were evidence of completion of the inmate grievance process, plaintiff would not have exhausted his administrative remedies until *after* he filed this lawsuit on July 22, 2011.[2]  Exhaustion must occur *before* bringing a civil action in district court concerning prison conditions.  *See* 42 U.S.C. § 1997e(a).

Based on the record of this case, at most, plaintiff has completed the first step of the grievance procedures available to him at the D.C. Jail – he filed an informal grievance on June 16, 2011.  Plaintiff has not shown that he followed the process beyond an informal request stage. Nothing in the record suggests that plaintiff was unaware of the grievance process, or that officials affirmatively obstructed his access to the grievance process, or that the administrative remedies were otherwise unavailable.

The PLRA's exhaustion requirement "occasionally may be harsh in its application." *Graham v. Cnty. of Gloucester, Va.*, 668 F. Supp. 2d 734, 740 (E.D. Va. 2009), but its "requirements are clear: If administrative remedies are available, the prisoner must exhaust them." *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).  Plaintiff has not done so and, accordingly, defendants' motion for summary judgment will be granted.

---

[2]      It is the practice of the Clerk of Court to date-stamp the first page of each complaint and application to proceed *in forma pauperis* received by mail.  Review of the Court's docket shows that the Clerk received plaintiff's complaint and *in forma pauperis* application on July 22, 2011; the *in forma pauperis* application was approved on August 1, 2011, and the Clerk officially docketed the complaint on August 4, 2011.

### III.  CONCLUSION

There is no genuine issue of material fact with respect to the availability of inmate grievance procedures at the D.C. Jail and plaintiff's failure to complete the procedures before filing this action.  Accordingly, defendants' motion for summary judgment will be granted.  An Order accompanies this Memorandum Opinion.


DATE: 9/25/12

ROYCE C. LAMBERTH
United States District Judge